CADES SCHUTTE
A Limited Liability Law Partnership

PHILIP J. LEAS            1467-0
ELIJAH YIP                7325-0

1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
FAX: (808) 521-9210
Email: pleas@cades.com
Email: eyip@cades.com

Attorneys for Plaintiff
WOND FAMILY KAPALAMA, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WOND FAMILY KAPALAMA, LLC, a Hawai'i limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL TIRE THE AMERICAS, LLC, an Ohio limited liability company,<br><br>Defendant. | CIVIL NO. 1:16-CV-00676<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO [DOC. 60] DEFENDANT CONTINENTAL TIRE THE AMERICAS, LLC'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT IV OF PLAINTIFF'S COMPLAINT filed 10/06/2017; CERTIFICATE OF SERVICE<br><br>HEARING:<br>Date:  12/18/2017<br>Time: 10:30 a.m.<br>Judge: Honorable Leslie E. Kobayashi |

ImanageDB:4162451.1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND ..............................................................................................2

III.   ARGUMENT ...................................................................................................2

   A.  Defendant Did Not Request, and Is Not Entitled to, Summary Judgment
       as to Count IV in Its Entirety. ......................................................................2

   B.  Holdover Rent Is an Available Remedy for Breach of a Commercial
       Lease .............................................................................................................4

   C.  Defendant Is a Holdover Tenant Because It Failed to Surrender
       Possession of the Property in the Manner Prescribed by the Surrender
       Clause. ..........................................................................................................9

      1.  Plaintiff did not accept Defendant's relinquishment of the keys to the
          Property as a surrender of possession .......................................................9

      2.  There can be no surrender while Defendant deprives Plaintiff of
          complete use and enjoyment of the Property. .........................................11

   D.  Whether Plaintiff Was Reasonably Required to Undertake the
       Mitigation Measures Suggested by Defendant Is a Material Question of
       Fact that Precludes Summary Judgment. ...................................................14

IV.   CONCLUSION ..............................................................................................15


# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adon Constr. Inc. v. Renesola Am. Inc.*,
 2017 WL 1281869 (D. Haw. Apr. 4, 2017)........................................................14

*Cho Mark Oriental Food, Ltd. v. K&K Int'l*,
 73 Haw. 509, 836 P.2d 1057 (1992)...............................................................7, 8

*Coffin v. Fowler*,
 483 P.2d 693 (Alaska 1971) .............................................................................10

*Cohen v. Super. Ct.*,
 56 Cal. Rptr. 813 (Ct. App. 1967) ....................................................................10

*Doe v. Grosvenor Ctr. Assocs.*,
 104 Hawai'i 500, 92 P.3d 1010 (2004)...............................................................7

*First United Funding, LLC v. Naupaka Invs., L.L.C.*,
 2015 WL 4067188 (Ct. App. June 30, 2015) ...................................................14

*Ford Coyle Props., Inc. v. 3029 Ave. V Realty, LLC*,
 881 N.Y.S.2d 146 (N.Y. App. Div. 2009)........................................................10

*Hawaiian Ass'n of Seventh-Day Adventists v. Wong*,
 130 Haw. 36, 305 P.3d 452 (2013)...................................................................13

*Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc.*,
 84 Hawai'i 75, 929 P.2d 88 (1996).....................................................................8

*Hong v. Estate of Graham*,
 2003 WL 21268404 (Haw. S. Ct. May 30, 2003) ..............................................7

*Hussey v. Say*,
 139 Hawai'i 181, 384 P.3d 1282 (2016).............................................................9

*Lemle v. Breeden*,
 51 Haw. 478, 462 P.2d 470 (1969)............................................................5, 7, 8

*M & V Barocas v. THC, Inc.*,
 549 N.W.2d 86 (Mich. Ct. App. 1996)...............................................................9

*Malani v. Clapp*,
    56 Haw. 507, 542 P.2d 1265 (1975) ................................................................ 14

*Mariani Air Prod. Co. v. Gill's Tire Mkt.*,
    508 P.2d 808 (Utah 1973) ................................................................................ 10

*Noce v. Stemen*,
    419 P.2d 450 (N.M. 1966) ............................................................................... 10

*Peck v. Steere*,
    23 Haw. 550 (1916) ......................................................................................... 10

*Prop. Rights Law Grp., P.C. v. Lynch*,
    2014 WL 2452803 (D. Haw. May 30, 2014) .................................................. 14

*Richardson v. Sport Shinko (Waikiki Corp.)*,
    76 Hawaiʻi 494, 880 P.2d 169 (1994) ............................................................. 14

*SDR Assocs. v. ARG Enters., Inc.*,
    821 P.2d 268 (Ariz. Ct. App. 1991) ................................................................ 12

*Watson v. Brown*,
    67 Haw. 252, 686 P.2d 12 (1984) ..................................................................... 8

*Yee v. Okamoto*,
    45 Haw. 445, 370 P.2d 463 (1962) ................................................................... 9

**Statutes**

Haw. Rev. Stat. § 521-2 ........................................................................................... 6

Haw. Rev. Stat. § 521-3 ........................................................................................... 7

Haw. Rev. Stat. § 521-42 ......................................................................................... 7

Haw. Rev. Stat. § 666-13 ......................................................................................... 8

**Other Authorities**

58 Am. Jur. 2d <u>Nuisances</u> § 237 (2012) .................................................................. 13

52 C.J.S. <u>Landlord & Tenant</u> § 220 (2017) ............................................................ 10

66 C.J.S. <u>Nuisances</u> § 266 (1999) ........................................................................... 13

ImanageDB:4162451.1

8 David A. Thomas, Thompson on Real Property § 67.06(a)(2), (1994) ................................................................................................................. 13

9 Powell on Real Property § 64.07[3] .................................................................... 13

House Stand. Comm. Rep. No. 659-72, ................................................................. 5

Sen. Stand. Comm. Rep. No. 223-72, ..................................................................... 6

ImanageDB:4162451.1

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO [DOC. 60]
DEFENDANT CONTINENTAL TIRE THE AMERICAS, LLC'S
MOTION FOR SUMMARY JUDGMENT AS TO COUNT IV
OF PLAINTIFF'S COMPLAINT filed 10/06/2017**

## I.   INTRODUCTION

Defendant's Motion For Summary Judgment as to Count IV of Plaintiff's Complaint ("*Motion*") constructs this syllogism: (a) holdover rent is exclusively a statutory remedy; (b) the only statute providing for holdover rent is the Hawai'i Residential Landlord-Tenant Code, HRS chapter 521 ("*Chapter 521*"); and (c) because Chapter 521 applies only to residential leases, holdover rent is unavailable for commercial leases.  The foregoing argument is invalid because the first premise is false.  Holdover rent is available under common law.  Defendant[1] has not and cannot show that any Hawai'i statute has displaced that common law remedy.

Moreover, Defendant is a holdover tenant.  Defendant's mere vacation of the Property after expiration of the Sublease did not effectuate a surrender of the premises. Defendant did not return the Property in "good repair, order and condition, reasonable wear and tear excepted" as required by the Sublease. Defendant left the Property with remnants of underground structures it installed still intact and the environmental condition of the Property unresolved, hence depriving Plaintiff of complete use and enjoyment of the Property.  Defendant and

---

[1] Unless otherwise noted, capitalized abbreviations in this memorandum have the same meaning as they do in Plaintiff's Motion For Partial Summary Judgment Re: Count IV of Complaint [Doc. 62] ("*Plaintiff's MPSJ re Count IV*").

its agents subsequently returned many times to the Property to conduct tests and remove underground structures and ultimately left the Property in unusable condition with unfilled holes and unresolved contamination.

Finally, genuine issues of material fact preclude summary judgment on Defendant's affirmative defense of failure to mitigate damages.

In sum, Defendant should be denied partial summary judgment on the issue of whether holdover rent is an available remedy for breach of a commercial lease.

## II.    BACKGROUND

The pertinent factual background is set forth in Section II of Plaintiff's MPSJ re Count IV and its accompanying Separate and Concise Statement of Facts and the attachments thereto [Doc. 63], which Plaintiff incorporates by reference herein. Facts salient to the issues raised by the Motion are discussed below.

## III.   ARGUMENT

### A.    Defendant Did Not Request, and Is Not Entitled to, Summary Judgment as to Count IV in Its Entirety.

Plaintiff notes at the outset that the scope of the Motion is limited to a discrete issue. Despite the Motion's general request for an order granting summary judgment on Count IV of the Complaint, Defendant argues only that "holdover rent is not allowed for commercial properties as a matter of law." Memorandum in Support of Motion ("***Memo in Support***") at 2.  However, Count IV asserts multiple breaches of the Sublease and seeks a variety of remedies.  Holdover rent is just one

of the remedies sought for certain (but not all) breaches of the Sublease.

Count IV alleges that Defendant breached Covenant 9 (requirement to keep Property "in a strictly clean, neat and sanitary condition"), Covenant 13 (landlord's access to Property to inspect), Covenant 18 (covenant not to subject landlord or Property to liens, charges, and encumbrances), and Covenant 19 (the "***Surrender Clause***").  *See* Compl. [Doc. 1] ¶¶ 86-89. Paragraph 90 of the Complaint alleges that Defendant failed to pay carryover rent for which it is liable until it returns the Property to a condition that complies with Covenants 9 and 19.  Paragraph 91 of the Complaint further alleges:

> Continental Tire's breaches of the Sublease have caused Plaintiff to sustain damages including but not limited to: costs to perform environmental investigation that Continental Tire should have completed prior to the expiration of the Sublease, costs to remediate the contamination on the Property, ***and lost rent during the period following the expiration of the Sublease up until the time the Property is restored to the condition in which Continental Tire is obligated to return the Property to Plaintiff pursuant to Covenants 9 and 19 of the Sublease.***  (Emphasis added).

As the Complaint makes clear, holdover rent is a remedy for breach of Covenants 9 and 19 of the Sublease.  Since the Motion seeks only a summary judgment determination on the availability of holdover rent in the context of commercial leases, it should be construed as a motion for ***partial summary judgment*** on the issue of the availability of holdover rent for breach of Covenants 9 and 19 of the Sublease.  The Motion does not request, and therefore Defendant is

not entitled to, summary judgment on Count IV insofar as it (a) is based on breach of Covenants 8 and 13 of the Sublease and (b) seeks remedies other than holdover rent for breach of any provision of the Sublease, including Covenants 9 and 19.

> **B. Holdover Rent Is an Available Remedy for Breach of a Commercial Lease.**

The cornerstone of the Motion is the argument that holdover rent is not available in commercial leases because the Residential Landlord-Tenant Code, which provides for holdover rent, does not apply to commercial leases, and no other statute provides for holdover rent for commercial leases. The fallacy of this argument lies in its assumption that Chapter 521 entirely abrogated the common law remedy of holdover rent such that it is available only if a statute provides for it.[2] The Motion ignores the history of Chapter 521 and the rule that a statute does not displace common law unless the statute expressly says so.

The starting point of analysis is not Chapter 521 or any other statute, but the common law, because Chapter 521 was born out of an effort to change the common law applicable to residential leases. Under common law, leases did not contain a warranty of habitability or fitness for the purposes intended. The Hawai'i Supreme Court was reluctant to apply this longstanding rule in 1969 when it took up a case in which tenants of a rat-infested residence sued to recover their

---

[2] See Section III.C. of Plaintiff's MPSJ re Count IV for a discussion of Hawai'i common law regarding a tenant's liability for holdover rent for the period it does not fully relinquish possession of the premises at termination of the lease.

- 4 -

security deposit and rent payments under the theory that the landlord breached the implied warranty of habitability and fitness. *See Lemle v. Breeden*, 51 Haw. 478, 462 P.2d 470 (1969). The Court acknowledged that under the common law of real property, a lease was regarded as a conveyance of the premises for a term, the result being that "once an estate was leased, there were no further unexecuted acts to be performed by the landlord and there could be no failure of consideration." *Id.* at 429, 462 P.2d at 472. However, in the Court's view, this conceptualization of leases "has led to many troublesome rules of law which have endured far beyond their historical justifications." *Id.* One such rule is that no warranty of habitability and fitness is implied in a lease in the absence of a statute. *Id.* In light of modern changes in leasing transactions, the Court re-conceptualized a residential lease as a contractual relationship as well as a conveyance of land. A result of this re-conceptualization is that "an implied warranty of habitability and fitness for the purposes intended is a just and necessary implication." *Id.* at 433, 462 P.2d at 474.

*Lemle* prompted a two-year legislative effort to establish a new statutory regime to govern residential landlord-tenant relations. *See* House Stand. Comm. Rep. No. 659-72, 6th Leg., Reg. Sess. (1972), *reprinted in* 1972 Haw. House J. 961, 961 (Ex. 1 attached hereto) ("The proposed code has evolved out of two years of work involving study, deliberation, and research on the part of several legislative committees, aided by cooperation from many interest groups and

- 5 -

informed individuals."). The Hawaiʻi Senate introduced S.B. No. 1502-72 (which would eventually be enacted and codified as Chapter 521) to follow the Supreme Court's lead in modernizing the law of landlord-tenant relationships in the residential context, as explained by a Senate Committee Report on the bill:

> The purpose of this bill is to establish a new legal framework governing the relationships of *residential* landlord and tenants, consistent with the 1969 Hawaii Supreme Court decision in **Lemle v. Breeden** (51 H 426). The Court held that a lease is, in essence, a contractual relationship from which the warranty of habitability and fitness for the purposes intended is a just and necessary implication. The Residential Landlord-Tenant Code proposed in S.B. 1502-72, using that landmark decision as a basic proposition, is a relatively comprehensive measure and sets out in some detail the respective obligations of landlords and tenants and their respective remedies for breach of such obligations.

Sen. Stand. Comm. Rep. No. 223-72, 6th Leg., Reg. Sess. (1972), *reprinted in* 1972 Haw. Sen. J. 832, 832 (emphasis added) (see Ex. 2 attached hereto).

Chapter 521 thus displaced important aspects of the common law, but only as to *residential* landlord-tenant relations. The purpose statement in Chapter 521 identifies "rental of dwelling units," "housing," and "the law of residential landlord and tenant" as the subjects of regulation. HRS § 521-2(b). And even in the context of residential leases, Chapter 521 did not entirely displace the common law. Aspects of common law not expressly displaced by Chapter 521 remain valid:

> ***Unless displaced by the particular provisions of this chapter, the principles of law and equity, including*** the law relative to capacity to contract, principal and agent, ***real property***, public health, safety and fire prevention, estoppel, fraud, misrepresentation, duress, coercion,

- 6 -

>   mistake, bankruptcy, or other validating or invalidating cause ***supplement its provisions***.

HRS § 521-3(a) (emphasis added). Hence, it is clear that Chapter 521 modified the common law exclusively in the context of residential leases and did not in any way displace the common law applicable to ***commercial*** landlord-tenant relations.

The cases relied upon by Defendant actually reinforce this point. The warranty of habitability and fitness did not exist at common law, as noted in *Lemle*. Chapter 521 changed this in the residential lease context by imposing on landlords of residential properties an obligation to keep the premises in a habitable condition. *See* HRS § 521-42. Yet, Hawai'i courts still decline to imply a warranty of habitability in commercial leases. *See, e.g.*, *Doe v. Grosvenor Ctr. Assocs.*, 104 Hawai'i 500, 514, 92 P.3d 1010, 1024 (2004); *Hong v. Estate of Graham*, 2003 WL 21268404 (Haw. S. Ct. May 30, 2003); *Cho Mark Oriental Food, Ltd. v. K&K Int'l*, 73 Haw. 509, 514 n.1, 836 P.2d 1057, 1061 n.1 (1992).

Defendant cites these cases for the proposition that Chapter 521 does not apply to commercial leases, but Defendant misses the larger implication of the cases and their devastating effect on its Motion. The reason the warranty of habitability is not implied in the commercial lease context is that it is incompatible with the common law view of a lease as a conveyance of a real property interest to the lessee. *See Lemle*, 51 Haw. at 429, 462 P.2d at 472. The Hawai'i Supreme Court has not recast the theoretical framework for commercial leases as it did in

- 7 -

ImanageDB:4162451.1

*Lemle* for residential leases, nor has the legislature displaced the common law of commercial leasing with a statutory regime similar to Chapter 521.³  *See Cho Mark Oriental Food,* 73 Haw. at 514 n.1, 836 P.2d at 1061 n.1 (observing that the Hawai'i Supreme Court has never extended the theory of implied warranty of habitability and fitness to commercial leases as it did in *Lemle*).  Accordingly, commercial leases are still governed by common law.

In sum, Defendant cites no authority—because there is none—for the proposition that Chapter 521 abrogates common law in the commercial leasing context.  Indeed, Defendant's expansive view of Chapter 521's displacement of common law conflicts with the settled rule that "statutes in derogation of the

---

³ The general summary possession statute, HRS chapter 666 ("**Chapter 666**"), also supplements common law but does not displace it. Chapter 666's precursor was enacted in 1859—well before *Lemle* re-conceptualized residential landlord-tenant law in 1969 and the legislature enacted Chapter 521 in 1972—and the statute has not changed much since.  *See Watson v. Brown*, 67 Haw. 252, 256, 686 P.2d 12, 15 (1984). Chapter 666 does not abrogate the common law. For example, the Court in *Watson* observed that "[a] statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication," and held that Chapter 666's summary possession provision did not preclude a commercial landlord from using the common law remedy of self-help eviction. *Id.* at 257, 686 P.2d at 16. The Court similarly reversed a judgment denying a commercial landlord future rent under the theory that HRS § 666-13 cut off its right to damages on the date a writ of possession issued. *Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Hawai'i 75, 80, 929 P.2d 88, 93 (1996). The Court reasoned: "To hold that a landlord, injured by a breaching tenant, is precluded by HRS Chapter 666 from recovering damages flowing from the breach, would be to abrogate the common law absent clear legislative intent and to place this court's imprimatur of approval on economic, physical, and judicial waste. We decline to do so." *Id.*.

ImanageDB:4162451.1

common law must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies." *Hussey v. Say*, 139 Hawaiʻi 181, 190, 384 P.3d 1282, 1291 (2016).

### C. Defendant Is a Holdover Tenant Because It Failed to Surrender Possession of the Property in the Manner Prescribed by the Surrender Clause.

Defendant argues that it is not a holdover tenant because it has surrendered possession of the Property. Since Defendant raises surrender as an affirmative defense, it bears the burden to prove by a preponderance of the evidence that it surrendered possession. *See Yee v. Okamoto*, 45 Haw. 445, 450, 370 P.2d 463, 466 (1962). Defendant cannot carry this burden. Citing a hornbook, Defendant defines "possession" as "the elements of control over a definite physical area and the power to exclude others from that area …." Memo in Support at 10. Defendant did not surrender possession under this definition. Moreover, this definition of "possession" is ill-suited to the circumstances of this case or at best incomplete.

#### 1. Plaintiff did not accept Defendant's relinquishment of the keys to the Property as a surrender of possession.

Defendant contends that it surrendered possession by vacating the Property and returning the key to the gate securing the Property.[4] However, vacating the premises is not enough to constitute surrender. *See M & V Barocas v. THC, Inc.*,

---

[4] Defendant returned its set of keys to its property management agent rather than Plaintiff because Plaintiff intended to use the same agent after the Sublease expired. *See* Declaration of Michael M. Wond, Jr. ("***Wond Decl.***") ¶ 3; Ex. 3.

- 9 -

549 N.W.2d 86, 88 (Mich. Ct. App. 1996) ("Surrender of a lease involves more than mere abandonment of the premises by the tenant; it requires a mutual agreement between landlord and tenant to terminate the lease."). For example, a tenant who vacates the premises but leaves behind its equipment may be regarded as a holdover tenant who deprives the landlord of its right to possession. *See Cohen v. Super. Ct.*, 56 Cal. Rptr. 813, 816 (Ct. App. 1967).

A tenant's surrender of the lease requires acceptance by the landlord to be effective. *See Peck v. Steere*, 23 Haw. 550, 554 (1916) ("A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by ***mutual agreement*** between the parties." (Emphasis added)). It is well-settled that a tenant's delivery of its keys to the premises and the landlord's retention thereof do not constitute acceptance of a surrender.[5] This is especially true where the landlord notifies the tenant that it will remain liable for rent. *See* 52 C.J.S. Landlord & Tenant § 220 (2017). Here, Plaintiff notified Defendant that the Property needed to be returned in good order and condition and that Defendant would be liable for carryover rent

---

[5] *See Ford Coyle Props., Inc. v. 3029 Ave. V Realty, LLC*, 881 N.Y.S.2d 146, 147 (N.Y. App. Div. 2009) ("The mere retention of keys to the premises by the landlord after the tenant has returned them does not alone constitute a surrender by operation of law." (citation omitted)); *Mariani Air Prod. Co. v. Gill's Tire Mkt.*, 508 P.2d 808, 810 (Utah 1973) ("The mere acceptance of keys by the landlord, without more, neither terminates a lease, nor relieves the tenant of his obligation."); *Coffin v. Fowler*, 483 P.2d 693, 695 (Alaska 1971) (same); *Noce v. Stemen*, 419 P.2d 450, 451 (N.M. 1966) (same).

- 10 -

if it failed to remove the contamination from the Property before the expiration of the Sublease. *See* Exs. 4-8. Notice from the landlord that the tenant would be liable for rent notwithstanding its surrender of the premises precludes a finding that the landlord accepted the surrender. *See, e.g.*, *Peterson* v. Frazier, 18 Haw. 457, 459 (1907) (landlord deemed not to accept tenant's surrender where it rented out premises a month before the expiration but had consistently notified tenant that he would not be released from liability for rent until a replacement tenant was found).

Since delivery of keys is insufficient to constitute surrender, it is of no significance that Defendant coordinated with Plaintiff's agent for access to the Property to conduct testing after the expiration of the Sublease. In fact, such coordination of access sometimes occurred without Plaintiff's direct knowledge, as evidenced by the fact that Plaintiff and its counsel learned that Defendant's environmental consultant (ENPRO) conducted testing on the Property past the expiration of the Sublease only after receiving ENPRO's Phase II report on December 22, 2012 and reviewing it. Exs. 5 and 9; Wond Decl. ¶ 4; Declaration of Philip J. Leas ¶¶ 6, 11-12. In short, Defendant continued to exercise unrestricted access to the Property, and picked up the key any time it wanted it.

### 2. There can be no surrender while Defendant deprives Plaintiff of complete use and enjoyment of the Property.

Defendant incorrectly relies on the definition of "possession" in a section of *Powell on Real Property* distinguishing between leases and nonpossessory

- 11 -

interests.  *See* Memo in Support at 10 (citing 2 Richard R. Powell, Powell on Real Property § 16.02, at 16-24, in turn citing Restatement of Property § 7 (1936) entitled "Possessory Interests in Land"). That definition does not help determine if a holdover tenancy is established because it overemphasizes the element of control over the premises while ignoring the impact of the tenant's actions on the landlord's use and enjoyment of the premises. One can be a holdover tenant even after vacating the premises (thereby relinquishing control over it) by leaving the premises in a condition that deprives the landlord of full use of the property.  *See SDR Assocs. v. ARG Enters., Inc.*, 821 P.2d 268, 271 (Ariz. Ct. App. 1991) (former tenant who left premises in damaged state at expiration of lease, thus necessitating repairs preventing lessor from renting premises, held liable for holdover rent).

The applicable definition of "possession" is stated in the Hawai'i holdover tenancy case of *Smith v. Bottomley*, which construed the term as follows:

> [T]he actual dominion and control of the property, free from interference by any hostile claimant, with the ***complete use and enjoyment of the property***. It means the same complete dominion and ability to hold and enjoy which the lessee had a right to expect from the lessors when he first accepted the lease and which was actually accorded to him by the lessors at that time.

30 Haw. 353, 359 (1929) (emphasis added). Defendant is a holdover tenant under this definition because it continues to deprive Plaintiff of "complete use and enjoyment" of the Property. The Surrender Clause requires Defendant to deliver possession of the Property "in good repair, order and condition, reasonable wear

- 12 -

and tear excepted." Ex. A to Motion at 8-9.  Defendant did not return the Property in the manner described in the Surrender Clause.  The Property is contaminated with hazardous substances.  Defendant initially denied the presence of actionable levels of hazardous substances, which denial led to environmental testing being conducted well past the expiration of the Sublease.  Testing confirmed the presence of actionable levels of contamination, which still remain.  Defendant also left buried remnants of an oil-water separator ("**OWS**") system on the Property for approximately 18 months after the Sublease expired.  *See* Ex. 10 (pp. 16-18).

Plaintiff clearly has been deprived of complete use and enjoyment of the Property.  At minimum, Plaintiff could not re-let the Property while environmental testing was ongoing and removal of dilapidated underground structures that Defendant had installed was incomplete.  *See* Wond Decl. ¶ 5.  Defendant is liable for the damages flowing from the natural and proximate consequence of its breach of the Surrender Clause.  *See Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 49, 305 P.3d 452, 465 (2013).  Loss of rental income is a proper measure of such damages.  *See Jaasma*, 412 F.3d at 510; *see also* 8 David A. Thomas, Thompson on Real Property § 67.06(a)(2), at 119-20 (1994) (loss of rental value may be appropriate measure of damages for temporary impairment of real property); 9 Powell on Real Property § 64.07[3], at 64-40 (same); 66 C.J.S. Nuisances § 266 (1999) (same); 58 Am. Jur. 2d Nuisances § 237 (2012) (same).

### D. Whether Plaintiff Was Reasonably Required to Undertake the Mitigation Measures Suggested by Defendant Is a Material Question of Fact that Precludes Summary Judgment.

Failure to mitigate is an affirmative defense, and as such, Defendant bears the burden of proof and "must establish beyond peradventure all of the essential elements of the ... defense to warrant summary judgment in [its] favor." *Prop. Rights Law Grp., P.C. v. Lynch*, 2014 WL 2452803, at *10 (D. Haw. May 30, 2014) (first set of brackets and internal quotation marks omitted); *Adon Constr. Inc. v. Renesola Am. Inc.*, 2017 WL 1281869, at *3 (D. Haw. Apr. 4, 2017) (recognizing failure to mitigate as affirmative defense). Specifically, Defendant has the burden to prove that mitigation is possible and that Plaintiff failed to take reasonable steps to mitigate its damages. *Malani v. Clapp*, 56 Haw. 507, 517, 542 P.2d 1265, 1271 (1975). Whether one acted reasonably under the circumstances in mitigating damages is an issue of fact. *First United Funding, LLC v. Naupaka Invs., L.L.C.*, 2015 WL 4067188, at *6 (Ct. App. June 30, 2015); *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawaiʻi 494, 503, 880 P.2d 169, 178 (1994).

Material questions of fact preclude summary judgment on the affirmative defense of failure to mitigate damages. Defendant provides no support for its contention Plaintiff could have paved the Property and rented it once the Sublease expired on October 31, 2012. Environmental testing by ENPRO was incomplete when the Sublease expired, as testing extended into November 2012. ENPRO's

- 14 -

testing was rejected by HDOH, thus necessitating further environmental investigation, the results of which were not finalized and accepted by HDOH until November 2015. Additionally, Defendant left remnants of its OWS system buried on the Property, which it did not remove and dispose of until March or April 2014. It would have been wasteful for Plaintiff to cap the Property while environmental testing was ongoing. *See* Wond Decl. ¶ 6. It also would have been fruitless to attempt to rent the Property at fair market value while the extent of environmental contamination on the Property was clouded by uncertainty. *See Jaasma*, 412 F.3d at 511-13 (denying defendant's motion for summary judgment on former landlord's breach of lease claim on grounds of failure to mitigate damages given uncertainty surrounding property's environmental status).

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied.

DATED: Honolulu, Hawai'i, November 27, 2017.

        CADES SCHUTTE
        A Limited Liability Law Partnership

        /s/ Elijah Yip
        PHILIP J. LEAS
        ELIJAH YIP

        Attorneys for Plaintiff
        WOND FAMILY KAPALAMA, LLC