GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

| | |
|---|---|
| LISA A. BAIL | 6021-0 |
| lbail@goodsill.com | |
| LISA WOODS MUNGER | 3858-0 |
| lmunger@goodsill.com | |
| CHRISTINE A. TERADA | 10004-0 |
| cterada@goodsill.com | |

First Hawaiian Center
999 Bishop Street, Suite 1600
Honolulu, Hawaii 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

Attorneys for Defendant
CONTINENTAL TIRE THE AMERICAS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WOND FAMILY KAPALAMA, LLC a Hawai'i limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL TIRE THE AMERICAS, LLC, an Ohio limited liability company,<br><br>Defendant. | CIVIL NO. 16-00676 LEK-KJM<br><br>DEFENDANT CONTINENTAL TIRE THE AMERICAS, LLC'S **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: COUNT IV OF COMPLAINT** [DKT. NO. 62]; CERTIFICATE OF SERVICE<br><br>[Caption Continued On Next Page] |

6582651.6

        HEARING
DATE:    December 18, 2017
TIME:    10:30 a.m.
JUDGE:   Hon. Leslie E. Kobayashi

TRIAL DATE: None Set
JUDGE:   Hon. Leslie E. Kobayashi

DEFENDANT CONTINENTAL TIRE THE AMERICAS, LLC'S
**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT RE: COUNT IV
OF COMPLAINT** [DKT. NO. 62]

## I.     INTRODUCTION

Defendant CONTINENTAL TIRE THE AMERICAS, LLC ("Continental Tire") opposes Plaintiff WOND FAMILY KAPALAMA, LLC's ("Plaintiff") Motion for Partial Summary Judgment Re: Count IV of Complaint [Dkt. No. 62], filed herein on October 11, 2017 ("Plaintiff's Motion") on the basis that Continental Tire complied with the surrender clause in the Sublease, and is not responsible for contamination that existed before the Sublease was assigned to Continental Tire.  Disputed factual issues prevent entry of summary judgment for Plaintiff and neither the Sublease, nor the law, allows Plaintiff to recover holdover rent.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Relevant Property History

The relevant history of the Property is given in Continental Tire's Motion for Summary Judgment as to Count IV [Dkt No. 60] at 2-4 and will not be repeated pursuant to Court Order No. 69.[1]

---

[1] In compliance with Court Order No. 69, this Motion refers to Continental Tire's other pending summary judgment motions [Dkt. Nos. 56, 58].

Following Continental Tire's remediation of petroleum impacts,[2] the remaining contamination is lead in fill material. This fill material was brought onto the Property prior to Continental Tire's occupancy of the Property and prior to the assignment of the Sublease from Melim Tire & Rubber Co., Ltd. ("Melim") to The General Tire and Rubber Company in 1968. CS ¶ 1 ("Sublease Assignment"). Plaintiff admits that fill material was placed on the Property by both Plaintiff and Melim. CS ¶ 2, Ex. 1 at No. 5. Further, a soil survey by the federal government conducted in 1965 documents the presence of widespread fill material in this area of Honolulu, including the Property itself, prior to the 1968 Sublease Assignment. CS ¶ 3, Ex. 2 at 6, 31.

The Hawai'i Department of Health ("HDOH"), the agency responsible for oversight of investigation and remediation activities, has agreed the lead was "most likely imported with artificial fill material" from "an off-site, imported source." CS ¶ 4, Ex. 3 at xii, 54. The site investigation report by Kevin S. Kennedy Consulting LLC ("Kevin Kennedy") (CS ¶ 5, Ex. 3), approved by

---

[2] The factual issue presented by Plaintiff's Motion is whether the condition of the Property complied with the Surrender Clause of the Sublease. The history of Continental Tire's extensive environmental investigation and remediation of the Property is therefore not directly relevant to this Motion. Should the Court wish to review it, however, this history is set forth in CS ¶ 4, Ex. 3 and its Motion for Summary Judgment as to Counts I, II, and III [Dkt No. 56] at 4-7 and can be provided to the Court upon request.

HDOH (*id.*, Ex. 4)³, documented that "[t]he upper two feet of soil at the Site appeared to be imported mixed fill with minor trash and debris," *id.*, Ex. 3 xii, 54; *see also id.* at 11; Ex. 9 at 14-15, 25.  The Court should further note that statements by Plaintiff and its consultants to the contrary have not been approved by HDOH, which has oversight of this cleanup under Hawaiʻi Revised Statutes 128D.

On July 21, 2014, HDOH stated that the Property should either be (1) capped with HDOH approval of a site-specific Environmental Hazard Management Plan (the "Capping Remedy") or (2) excavated to two feet below the surface from decision units one and two (the "Excavation Remedy").  CS ¶ 7.  On August 18, 2016, HDOH reiterated to Plaintiff that it "had already indicated that either [capping or excavation] response would be appropriate for the site."  CS ¶ 8, Ex. 7.  Although Plaintiff has insisted on the more expensive Excavation Remedy as opposed to the Capping Remedy, CS ¶ 9, Ex. 8 at 30, Plaintiff's discovery responses indicate that it has neither cleaned up the lead-impacted fill material nor attempted to lease the Property.  CS ¶ 10, Ex. 1 at No. 8.

Continental Tire is not responsible for an Environmental Hazard Management Plan ("EHMP") for contamination it did not cause.  Mot. at 15.  Further, EHMPs are typically not prepared until the remedy requiring the EHMP is selected.  CS ¶ 11.

---

³ Kevin Kennedy's Site Work Plan (CS ¶ 6, Ex. 5) was also approved by DOH (*id.*, Ex. 6).

Plaintiff has inappropriately delayed remediation by conducting a Remedial Alternatives Analysis and conducted a public meeting even though HDOH determined that "a Remedial Alternatives Analysis was inappropriate" and HDOH stated that it did "not believe that a public meeting or notice [was] appropriate or warranted." CS ¶ 13, Ex. 7.

## III. PLAINTIFF'S MOTION MUST BE DENIED

### A. Continental Tire Is Not Responsible for Contamination Prior to the 1968 Sublease Assignment

The Surrender Clause, Covenant 19 of the Sublease ("Surrender Clause"), requires delivery of possession "together with all erections and improvements upon or belonging to the same," and "in good repair, order and condition, reasonable wear and tear excepted." Pl.'s Ex. 9. Continental Tire complied with these requirements and is not responsible for contaminated fill that predated the 1968 Sublease Assignment to Continental Tire.

Continental Tire's obligations do not extend to contamination caused by the import of fill material by Plaintiff and Melim before 1968. *Honolulu v. Churchill*, 167 F. Supp. 2d 1143, 1152 (D. Haw. 2000) ("'[T]he liability of the assignee does not extend back to breaches prior to the assignment.'" (citing Milton R. Friedman, Friedman on Leases, § 7.501c2(b), at 392 (1997) ); *Servco Pac., Inc. v. Dods*, 193 F. Supp. 2d 1183, 1193 (D. Haw. 2002) (the liability of the assignee does not extend to past breaches where the "assignment does not 'clearly and

4

unequivocally' assume either general environmental liability or the indemnitee's . . . past breaches.").

### 1. "Wear and Tear" During a Tenancy is a Factual Issue Inappropriate for Summary Judgment

Plaintiff's argument that "[r]eturn of the Property in a contaminated state violates the requirement of the Surrender Clause," Mot. at 28, fails as a matter of law.[4] The condition of the Property at the time of the 1968 Sublease Assignment must be proven by Plaintiff to establish a breach of the Surrender Clause. *See*, *e.g.*, *Lindner v. Meadow Gold Dairies, Inc*, No. 06-00394JMSLEK, 2007 U.S. Dist. LEXIS 84602, at \*16 (D. Haw. Nov. 15, 2007) (interpreting a surrender clause which required defendant "to restore the premises to its pre-Lease condition," reasonable wear and tear excepted). Plaintiff offers no evidence whatsoever of the Property's condition either at the time of the 1968 Sublease Assignment, or at any earlier time.

---

[4] Plaintiff claims that not only lead, but also total petroleum hydrocarbons as oil range organics ("TPH-ORO") are also present at levels exceeding the Tier 1 environmental action levels for commercial/industrial use ("Tier 1 C/I EAL"). Mot. at 28. This claim, however, is based on unreliable sampling by BVNA in 2016, the results of which have not been reviewed or accepted by HDOH. There is no work plan or site investigation report for the 2016 BVNA sampling, let alone a work plan or report approved by HDOH. There is no presentation of BVNA's sampling and analytical procedures, field methodology, quality assurance practices, laboratory analytical reports or chain of custody forms. CS ¶ 5, Ex. 9 at 16, 21-22. The BVNA data is therefore unsupported and unreliable.

5

The "reasonable wear and tear" language of the Surrender Clause also requires that Plaintiff has the burden of proving the condition of the Property at the time of the 1968 Sublease Assignment. "Reasonable wear and tear" can only be assessed in relation to the earlier condition of the Property. *See, e.g.*, *Bobeck Real Estate Co. v. Frontier N. Inc.*, 120 F. Supp. 3d 845, 855 (N.D. Ind. 2015) (tenant could not be held liable for breach of maintenance and surrender provisions absent evidence of property's original condition); *Bancamerica Commercial Corp. v. Trinity Indus.*, 900 F. Supp. 1427, 1478 (D. Kan. 1995), *aff'd in part, rev'd in part and remanded sub nom. Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792 (10th Cir. 1996), *amended*, 103 F.3d 80 (10th Cir. 1996) (regarding tanks installed by a prior owner, "[e]ven though the evidence establishes that the tanks caused some contamination at the Site, it is by no means clear that this occurred during the period of [the Defendant's] lease.").

The cases cited by Plaintiff are inapposite. *See, e.g. Tobin v. Gluck*, 137 F. Supp. 3d 278, 280, 300-301 (E.D.N.Y. 2015) (defendant liable only after bench trial in which court made finding that the defendant <u>had caused</u> the contamination ); *NRC Corp. v. Amoco Oil Co.*, 205 F.3d 1007, 1012 (7th Cir. 2000) (relying on the indemnification clause in the lease, <u>not</u> the surrender clause, in determining liability for contamination). Finally, Plaintiff mischaracterizes *Smith v. Bottomley*, 30 Haw. 853 (1929), Mot. at 28, a matter not involving

6

contamination, but instead incomplete surrender due to a subtenant squatting on a portion of the land.  *Smith*, 30 Haw. at 853-55.  Here, Continental Tire surrendered the entire portion of the Property and no continued occupancy by subtenants was involved.

> **B.** **Continental Tire Surrendered the Property in Compliance with the Sublease**

As a threshold issue, possession was returned to Plaintiff.  "Possession" is defined by "the elements of control over a definite physical area and the power to exclude others from that area . . . ."  *See* 2-16 Powell on Real Property §16.02 (citing Restatement of Property §7 (1936)).  Here, Continental Tire vacated the Property when the Sublease expired on October 31, 2012, and has needed permission to access the Property since then.  *See* Continental Tire's Motion for Summary Judgment as to Count IV [Dkt No. 60], CS ¶ 6.  Therefore, Continental Tire clearly does not exert any control over the Property.  Without access to or control over the Property, Plaintiff cannot successfully argue that Continental Tire is in "possession" of the Property.

> **1.** **Removal of Structures**

Nothing in the lease required the removal of the OWS or the pipes, despite Plaintiff's arguments to the contrary.  In fact, the Surrender Clause itself contemplated the opposite, directing that Lessee will peaceably and quietly deliver up to the Lessor possession of the land hereby demised, <u>together with all erections</u>

7

and improvements upon or belonging to the same." Pl.'s Ex. 9 at ¶ 19 (emphasis added). The Surrender Clause confirms that the presence of the OWS on the Property is not a per se violation of the clause.

In addition, a party does not automatically breach a surrender clause by leaving certain items on a property. *See, e.g.*, *Bancamerica Commercial Corp.*, 900 F. Supp. at 1477-78 (denying breach of lease claim based on tenant's failure to repair and remove underground storage tanks installed and used by a prior tenant); *Prospect Hill Acquisition, LLC v. Tyco Elecs. Corp.*, 414 F.3d 181, 185 (1st Cir. 2005), aff'd, 414 F.3d 181 (1st Cir. 2005) ("because Tyco had no obligation to remove the concrete floor, it did not breach the lease and become a holdover tenant").[5]

Whether "wear and tear" was unreasonable under the Surrender Clause is a question of fact.[6] *Moran v. Guerreiro*, 97 Hawaiʻi 354, 371, 37 P.3d 603, 620 (App. 2001) (noting that the issue of whether a party breached a contract is generally a question of fact); *Taylor v. Detroit Diesel Realty, Inc.*, No. 3:12-CV-506-CWR-LRA, 2014 U.S. Dist. LEXIS 62512, at *47 (S.D. Miss. May 6, 2014)

---

[5] Continental Tire had the 125 feet of remnant pipes, and the 90-cubic foot concrete slab excavated and disposed off-site from the Property on March 27 and 28, and April 17, 2014. *See* CS ¶ 4, Ex. 3 at 17-18; CS ¶ 5, Ex. 9 at 17-18.
[6] Continental Tire's dispute of factual issues does not affect the outcome of Continental Tire's Motion for Summary Judgment as to Count IV [Dkt No. 60]. That motion does not ask the Court to decide, as a matter of law, whether there was a breach of the Sublease. Instead, that motion asks the Court to decide, as a matter of law, that holdover rent cannot be awarded to Plaintiff.

(surrender of the leased premises "'in as good state and condition as received, reasonable wear and tear . . ., excepted,'" was "clearly a question of fact for the jury." (citation omitted)); *Hinkson v. Great Atl. & Pac. Tea Co.*, 134 Pa. Super. 161, 166, 3 A.2d 197, 199 (1938) (whether appellant surrendered the premises 'in as good state and condition as received, reasonable wear and tear and damages by fire or the elements, or from other causes beyond its control, excepted' . . . . was clearly a question of fact for the jury").

As cases such as *Bancamerica Commercial Corp.*, 900 F. Supp. at 1477-78 show, what constitutes "reasonable wear and tear" differs based on the contracting parties' understanding of what the property would be used for at the time the agreement was made. For example, in *Bancamerica*, leaving lead paint residue did not violate the lease (irrespective of whether it violated other laws) because the parties knew that such paint was being used on the property. 900 F. Supp. at 1477. The court also rejected the argument that the defendant violated the surrender provision by abandoning barrels at the site, where barrels were present prior to the defendant's occupation of the property, and the defendant "made substantial efforts to clean up the Site and respond to [the Plaintiff's] complaints." *Id*. Here, the Sublease clearly contemplated commercial use of the Property.[7] Prior tenants occupied the Property and placed fill on the Property, including

---

[7] Pl.'s Ex. 9 at ¶ 14 ("That the Lessee will use or allow to be used the premises hereby demised solely for business purposes.").

9

Plaintiff.  CS ¶ 2, Ex. 1 at No. 5.  Plaintiff cannot demonstrate on summary judgment that the condition of the Property upon surrender exceeded the "reasonable wear and tear" contemplated by the parties to the Sublease Assignment.[8]  Moreover, the condition of the Property is a question of fact, not law, and is therefore inappropriate for summary judgment.

### 2. The Sublease Did Not Require "Marketable Condition" Upon Surrender

Plaintiff's argument that the leased premises were not "in marketable condition," Mot. at 3 (emphasis added); *id*. at 27, is unsupported by the Surrender Clause, which does not refer to "marketable condition."  Additionally, Hawai'i cases reject Plaintiff's concept of a marketability requirement upon surrender.  In *Orient Ins. Co. v. Pioneer Mill Co.*, 27 Haw. 698, 700, 704 (1924), a case involving a lease that required maintenance of the property in "good order and repair," the Court noted that such stipulation did not impose upon "the tenant the responsibility of an insurer.  If that greater risk is assumed it must be clearly and explicitly set forth in the contract.'"  *Id*. at 704; *see also Servco*, 193 F. Supp. 2d at 1194 (holding that the lessee was not required to indemnify the property owner for

---

[8] Plaintiff's reliance on *SDR Associates v. ARG Enterprises, Inc.*, 821 P.2d 268 (Ariz. Ct. App. 1991), a case out of this jurisdiction, fails for multiple reasons, namely that the subject property in *SDR Associates* needed extensive repairs, which prevented the building owner from renting the property.  *Id*. at 269.  This is clearly not the case here, as Plaintiff has not attempted to argue how the concrete slab or approximately 125 feet of underground pipes prevented the Plaintiff from renting the Property.  CS ¶ 4, Ex. 3 at xii.

10

environmental problems that occurred prior to its tenancy unless the lease "clearly and unequivocally" required indemnification for past environmental contamination).

Plaintiff's reliance on *Jaasma v. Shell Oil Co*., 412 F.3d 501 (3d Cir. 2005) for the proposition that the Property must be "marketable upon surrender" is misplaced. Far from announcing any legal rule, the Third Circuit in *Jaasma* merely reversed the district court's grant of judgment as a matter of law on the breach of contract claim because of factual issues. The district court in *Jaasma* had done something similar to what Plaintiff here is asking — it granted judgment as a matter of law on the breach of contract action (only there it was for the defendant). *Id*. at 506-07. But the Third Circuit reversed, explaining the duty to return the property to its "original state" entails factual issues,

> we conclude that the language of the lease and the parties' course of dealing <u>present a jury question</u> whether defendants had a duty under the lease to obtain an NFA following the discharge of contaminants from defendants' underground storage tanks and to render the property fully marketable by the conclusion of the lease term.

*Id*. at 508 (emphasis added). The Third Circuit held in *Jaasma* that factual issues as to the meaning of the contract language precluded the district court's grant of

11

judgment as a matter of law.  Plaintiff offers no other support for its argument that the Property was not in "marketable condition."[9]

Further, the allegation that the Property is unmarketable is contradicted by the conclusion – accepted by DOH (CS ¶ 12, Ex. 4) – that "[b]ecause the soil with the higher lead concentration is capped with cleaner soil and is at a depth below 1.0 foot bgs it poses <u>no risk</u> to Site or off-Site workers," *id*., Ex. 3 at xii, 54 (emphasis added).

### C. Continental Tire Is Not Liable for Carryover Rent

Continental Tire has expended a large amount of money in conducting multiple environmental investigations and remediation activities.  These activities are discussed in detail in CS ¶¶ 4, 6, Exs. 3, 5 and in Continental Tire's Motion for Summary Judgment as to Counts I, II, and III [Dkt. No. 56] at 4-7.  HDOH agrees that environmental issues are resolved by capping this contamination.  CS ¶ 7.  Significantly, the delays in implementing the remedy to address lead-containing fill material were caused by Plaintiff.   At the latest, since July 2014, HDOH has expressed its opinion that the Property should either be capped or excavated to two

---

[9] Further, Plaintiff's argument that a failure to obtain a NFA constitutes a breach of a sublease has been rejected by courts in the Ninth Circuit.  *See, e.g., Silicon Valley Telecom Exch., LLC v. Verio, Inc.*, No. C12-00899 HRL, 2013 U.S. Dist. LEXIS 114379, at *15-17 (N.D. Cal. Aug. 13, 2013) (noting that the "defendants' failure to obtain an Environmental Closure Letter, [a No Further Action Letter], or other similar document, did not constitute a breach of the Verio Sublease or the NTTA Sublease" and rejecting Plaintiff's claim for holdover rent).

feet. *Id*. However, there is no indication that Plaintiff has begun implementing either of these alternatives. CS ¶ 10, Ex. 1 at No. 8. Instead, Plaintiff has inappropriately delayed remediation by conducting a Remedial Alternatives Analysis and conducted a public meeting even though HDOH determined that "a Remedial Alternatives Analysis was inappropriate" and HDOH stated that it did "not believe that a public meeting or notice [was] appropriate or warranted." CS ¶ 13, Ex. 7. Plaintiff uses delay caused by this additional process and its insistence on the more expensive Excavation Remedy to claim a windfall holdover rent remedy.

As described above, Continental Tire did not breach the Surrender Clause. Nevertheless, even assuming *arguendo* that it did, Plaintiff is not entitled to holdover rent as a matter of law, as Hawaii's holdover rent statute only applies to residential leases, this is a commercial lease, and there is no Hawaiʻi statute that allows holdover rent for commercial leases. This issue is discussed at length in Continental Tire's Motion for Summary Judgment as to Count IV [Dkt No. 60] at 5-10.

Plaintiff tellingly relies heavily on cases out of this jurisdiction, such as *Jaasma* and *SDR Assocs*., which have already been distinguished. *See* Sections III(B)(1)-(2), *supra*. In addition, none of the Hawaiʻi cases cited by Plaintiff hold

13

that there is an implied entitlement to holdover rent when a commercial lease is silent on the issue, and none of them are remotely factually similar.[10]

Therefore, the application of the residential holdover statute to Continental Tire's commercial Sublease is unsupported by law, particularly as the Sublease does not provide an express holdover provision.

### 1. Continental Tire Is Not Holdover Tenant

As discussed at length in Continental Tire's Motion for Summary Judgment as to Count IV [Dkt No. 60] at 10-11, even if, assuming *arguendo*, the Court does extend the residential holdover statute to a commercial lease, Continental Tire is not in possession of the subject property and thus cannot be considered a holdover tenant. *See also Charlebois v. Carisbrook Indus., Inc.*, 23 A.D.3d 821, 821-23 (N.Y. App. Div. 2005) ("Plaintiffs' claim of a holdover tenancy premised upon defendants' retention of a set of keys and their periodic use of the premises to complete repairs is insufficient. Typically, 'a tenant who has

---

[10] *Schimmelfennig v. Grove Farm Co.*, 41 Haw. 124, 134 (1955) (decided prior to the enactment of the Residential Landlord-Tenant Code in 1973 and noting that when a tenant remains in possession following expiration of the lease, the landlord has the option to (1) treat him as a tenant; (2) proceed against him as a trespasser; or (3) bring an action for unlawful detainer); *Smith*, 30 Haw. 853 (involving a claim for adverse possession); *Brewer v. Chase*, 3 Haw. 127 (1869) (involving a claim related to exclusive use of a building); *Hussey v. Say*, 139 Hawaiʻi 181, 384 P.3d 1282 (2016) (involving a petition for a writ of quo warranto challenging an individual's authority to hold public office); *In re International Kitchens*, 6 B.R. 756 (D. Haw. Bankr. 1980) (noting that the tenant became a holdover tenant at Pearlridge Mall after the lease was terminated pursuant to a court-approved stipulation during bankruptcy proceedings).

vacated [the] premises but breached covenants to repair cannot be held liable for holdover rent while the repairs are made and the premises unleased.'" (citations omitted)); *Fairfax Portfolio, LLC v. Owens Corning Insulating Sys., LLC*, 509 F. App'x 822, 829 (10th Cir. 2013) (noting that "the plain and ordinary meaning of the term 'holding over' in . . . the lease agreement refers to the failure to surrender property, not failure to make required repairs or failure to surrender in a particular condition." (citation omitted)).

    **D.**    **Plaintiff Failed To Mitigate Damages**

As discussed at length in Continental Tire's Motion for Summary Judgment as to Count IV [Dkt. No. 60] at 11-12, any potential damages awarded to Plaintiff should be reduced due to its failure to mitigate damages.

**IV.**    **CONCLUSION**

Based on the foregoing, the Court should deny Plaintiff's Motion and grant judgment in favor of Continental Tire on all of Plaintiff's claims.

DATED: Honolulu, Hawai'i, November 27, 2017.

/s/ Lisa A. Bail
LISA A. BAIL
LISA WOODS MUNGER
CHRISTINE A. TERADA

Attorneys for Defendant
CONTINENTAL TIRE THE AMERICAS, LLC